**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MANUEL ANTONIO LIBERATO, M L RESTAURANT, CORP., M.L. SAN JOSE ENTERPRISES, CORP., d/b/a LIBERATO RESTAURANT, NELSON GOMEZ, and SARAH VALLEJO, | CA No: |
| Plaintiffs, | **15 CV 00326** |
| | **COMPLAINT** |
| -against- | |
| LAUNDRY WORKERS CENTER UNITED, VIRGILIO OSCAR ARAN, ROSANNA RODRÍGUEZ ARAN, MAHOMA LOPEZ GARFIAS, OSCAR RAMIREZ, PABLO RUTILIO, and MAGGIE ANDRES CRECENCIO | **(Jury Trial Demanded)** |
| Defendants. | |

RECEIVED JAN 16 2015 S.D.N.Y. CASHIERS U.S.

Plaintiffs, Manuel Antonio Liberato, M L Restaurant, Corp., M.L. San Jose Enterprises, Corp., d/b/a Liberato Restaurant, (collectively, "Liberato") and Nelson Gomez and Sarah Vallejo (together with Liberato "Plaintiffs") as and for their complaint against Defendants Laundry Workers Center United, Virgilio Oscar Aran, Rosanna Rodríguez Aran, Mahoma Lopez Garfias, Oscar Ramirez, Pablo Rutilio and Maggie Andres Crecencio (Collectively, "Defendants") allege with knowledge as to their own acts and upon information and belief as to all other matters, as follows:

## GENERAL ALLEGATIONS

1.     Liberato brings this action to vindicate its right to control and operate its business free from the extortionate and threatening conduct of the Defendants.

2.     Motivated by a quest for power, greed and ill-will, the Defendants conceived of and implemented a conspiracy to extort money and inflict substantial damages upon Plaintiffs by, among other things, stalking and harassing the patrons, management and employees of Liberato, defaming Plaintiffs and other employees, filing numerous frivolous

1

and objectively baseless complaints to this Court and to the National Labor Relations Review Board (NLRB), and unlawfully interfering with Plaintiffs' existing and prospective business relations.

3.    Plaintiffs Gomez and Vallejo bring their individual claims against the Defendants for the harm that they have suffered as a result of Defendants' conduct.

4.    Together all Plaintiffs bring this action for damages and injunctive relief pursuant to the Racketeer Influenced and Corruption Organizations Act, 18 U.S.C. § 1961 *et seq.* (RICO), the Labor-Management Relations Act, 29 U.S.C. § 141 *et seq.* and the common law, including libel, slander, injurious falsehood, defamation, tortious interference with existing and prospective business relations and civil conspiracy.

## JURISDICTION AND VENUE

5.    Plaintiffs' federal claims for relief allege violations of RICO, 18 U.S.C. § 1961 *et seq.* and the Labor-Management Relations Act, 29 U.S.C. § 141 *et seq.* This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § 1961 *et seq.* (RICO), 29 U.S.C. § 187 and 28 U.S.C. §§ 1331 (federal), 1337 (commerce) and 1367 (supplemental).

6.    Personal jurisdiction and venue in this district are proper pursuant to 18 U.S.C. §1965 and 28 U.S.C. § 1391(b) because (i) Defendants are found in, have agents and transact their business and affairs in this district, and (ii) a substantial part of the events or omissions giving rise to the claims for relief occurred in this district.

## PARTIES

**Plaintiffs**

7.    Plaintiff Manuel Antonio Liberato is a resident of Bergen County, New Jersey. At all relevant times herein, Mr. Liberato has served as an officer, shareholder and principal of

M.L. Restaurant, Corp. and M.L. San Jose Enterprises, Corp., both of which do business as "Liberato Restaurant".

8.     Plaintiff M L Restaurant Corp. d/b/a Liberato Restaurant is a domestic corporation organized and existing under the laws of the State of New York, having its principal place of business at 10 W. Burnside Avenue, Bronx County, New York.

9.     Plaintiff M.L. San Jose Enterprises Corp. d/b/a Liberato Restaurant is a domestic corporation organized and existing under the laws of the State of New York and having its principal place of business at 1 W. 183rd Street, Bronx County, New York.

10.     Collectively, Manuel Antonio Liberato, M L Restaurant, Corp., M.L. San Jose Enterprises, Corp., are referred to as "Liberato."  Liberato is engaged in commerce as defined in 18 U.S.C. §1951(b)(3).

11.     Plaintiff Nelson Gomez ("Gomez") is a resident of New York County, New York. At all relevant times herein, Mr. Gomez has been employed by Liberato at 1 W. 183rd Street, Bronx, New York.

12.     Plaintiff Sarah Vallejo ("Vallejo") is a resident of Bronx County, New York. At all relevant times herein, Ms. Vallejo has been employed by Liberato at 1 W. 183rd Street, Bronx, New York.

**Laundry Worker's Center**

13.     Defendant Laundry Workers Center United ("LWC") is an unincorporated voluntary association, having its principal office at 330 W. 38 Street, Suite 505, New York County, New York.  Additional places of business listed on its website include 619 Lexington Avenue which is also within New York County.  On its website LWC purports to be a development and training program for low-wage workers in New York City.

3

14.     Although, LWC is not a legally recognized entity it is an "enterprise" within RICO and thus can properly be named here.  18 U.S.C. § 1961(4).

**Individual Defendants**

15.     Defendant Virgilio Oscar Aran ("Aran") is a resident of New York County, New York.  Mr. Aran is a Co-Founder, officer and principal of LWC.  At all relevant times herein, he has served as the Executive Director of LWC and is one of the principal organizers for the "Liberato Campaign" (defined below).

16.     Defendant Rosanna Rodríguez-Aran ("Rodríguez-Aran") is a resident of New York County, New York.  Mrs. Rodríguez-Aran is a Co-Founder, officer and principal of LWC.  She serves as the Secretary and Treasurer of the LWC and is one of the principal organizers for the "Liberato Campaign" (defined below).

17.     Defendant Mahoma Lopez Garfias ("Garfias") is a resident of Queens County, New York.  At all relevant times herein, Mr. Garfias has been an officer and/or principal of Defendant LWC.  He serves as President of Workers' Development Training for the LWC and is one of the principal organizers for the Liberato Campaign (defined below).

18.     Defendant Oscar Ramirez ("Ramirez") is a resident of Bronx County, New York.  Mr. Ramirez is a former employee of Liberato Restaurant.  He was terminated in December 2013 for insubordination.  Since then Mr. Ramirez has become a member of LWC and is one of the principal participants in the Liberato Campaign.

19.     Defendant Pablo Rutilio ("Rutilio") is a resident of New York County, New York.  Mr. Rutilio is a former employee of Liberato Restaurant.  Although he resigned to seek "better" opportunities, since the failure of his other venture Mr. Rutilio joined the LWC and the Liberato Campaign in an attempt to get his job back.

20.     Defendant Maggie Andres Crecencio is a resident of Bronx County, New York. Ms. Crecencio is a current employee of Liberato, a waitress in the morning shift at Liberato's 1 W 183rd street location.  Ms. Crecencio is a member of LWC and has been one of the lead members in the Liberato Campaign.

21.     Defendants Aran, Rodriguez-Aran, Garfias, Ramirez, Rutilio and Crecencio are hereinafter referred to as the "Individual Defendants."

22.     At all relevant times herein the Individual Defendants ratified, authorized, ordered, directed, actually participated in, and had actual knowledge of each of the racketeering, tortious and unlawful acts stated in this Complaint designed to defame, harass, intimidate, and coerce Plaintiffs in order to extort moneys in violation of 18 U.S.C. §1951 .

23.     At all relevant times herein the Individual Defendants acted in their personal capacity and under the name of the enterprise, LWC, in order to conduct their illegal activities.

24.     The LWC and the Individual Defendants are sometimes hereinafter referred to collectively as "Defendants."

## RELEVANT TIME PERIOD

25.     Defendants' conspiracy to extort money and property from and to inflict damage upon Plaintiffs, as alleged fully herein, began in or about April 2014 and continues to date.

## FACTS REGARDING DEFENDANTS' UNLAWFUL SCHEME

## I.     BACKGROUND OF THE LIBERATO CAMPAIGN: HISTORTICAL CONTEXT AND THE LWC

### A.  History of Labor Union "Corporate Campaigns"

26.     In or around April 19, 2014, Defendants publicly announced commencement of a Corporate Campaign against Liberato.  The term "Corporate Campaign" has a generally

5

understood meaning in the labor relations field and "encompasses a wide and indefinite range of legal and potentially illegal tactics used by unions to exert pressure on an employer. . . [including] litigation, political appeals, requests that regulatory agencies investigate and pursue employer violations of state or federal law, and negative publicity campaigns aimed at reducing the employer's goodwill with employees, investors, or the general public." *Food Lion, Inc. v. UFCW*, 103 F.3d 1007, 1014 n.9 (D.C. Cir. 1997).

27.     The purpose of a Corporate Campaign, as explained repeatedly in published union literature, is to coerce an employer's compliance with the desires of a labor organization, regardless of the degree of employee support and without involving the NLRB, the executive agency charged with enforcement of the National Labor Relations Act against employers and labor organizations.  As such, Corporate Campaigns involve the investment of substantial resources towards events, actions and conduct that have little to no direct relation to the wages, hours, benefits and working conditions of the employees of the targeted employer.

28.     The philosophy of extorting an employer in this manner and without regard for the level of employee interest in forming or joining a labor union is articulated in the article "The Pressure is On: Organizing Without the NLRB," written by former United Food and Commercial Workers' (UFCW) organizer Joe Crump.  In that article Crump states, "Who do we really need to convince of the advantages of being union? Employees or employers . . . Organizing without the NLRB means putting enough pressure on employers, costing them enough time, energy and money to either eliminate them or get them to surrender to the union . . . One of the concerns organizers might have about waging economic war on an unorganized company is that it might turn employees against the union. I look at it this way: If you had massive employee support, you probably would be conducti ng a traditional organizing

6

campaign."

29.     The ultimate goal of a Corporate Campaign such as Defendants' scheme to extort Liberato, is either to destroy the employer's business or to coerce the employer into "voluntary" union recognition.  Crump defined a Corporate Campaign's success in one of two ways: "either a ratified, signed collective bargaining agreement with a previously non-union employer or a significant curtailment of a nonunion operator's business, including shutting the business down.  Neither of these outcomes will occur by relying on the NLRB."

30.     In August 2007, at a dinner of labor activists that took place in Chicago, Illinois and which was hosted by Change to Win, a labor organization,, a representative of Change to Win's Strategic Organizing Center described the purpose of a Corporate Campaign in the following manner: "It's no longer sufficient to use a strike or other work disturbance to pressure a company to do the right thing. Increasingly, it's necessary to pressure a company by causing a crisis of confidence among its customers, shareholders, directors or other constituents."

### B.  LWC: The Enterprise

#### i.  The LWC

31.     According to its website the LWC was founded by defendants Aran and Rodríguez-Aran in 2011 in a purported attempt to bring a voice to immigrant and illegal workers regarding their living and working conditions.

32.     In actually, the LWC presents itself as a labor support organization that charges low wage, immigrant and illegal workers a fee in return for a promise to obtain for them additional moneys, better working conditions and help with their migration status.

33.     LWC promises that if these employees join LWC and pay its required weekly

fee, LWC will use all of its power and influence in order "protect" the employee and to recoup

from that employee's employer tens of thousands of dollars of allegedly owed wages.  As an

additional benefit, the LWC promises to help solve the employee's undocumented status.

> ### ii.  Extorting Companies for Union Recognition and Other Money, Property and Valuable Assets is LWC's Regular Way of Doing Business

34.     LWC employs extortionate Corporate Campaign tactics as a regular way of

doing business.  Its modus operandi involves:

a)     targeting a particular employer;

b)     carefully planning a process for discovering and disclosing negative information about the target;

c)     creating sham and/or surrogate entities through which to conceal its involvement and portray the conduct of those entities as spontaneous action by independent, socially-conscious third parties;

d)     recruiting a handful of disgruntled and/or former employees of the target employer and publicly portraying them as representative of the target employer's employees as a whole;

e)     exploiting the genuine social and political  concerns of third parties with diverse interests, often completely unrelated to labor concerns, by tailoring allegations to specific audiences, including, but not limited to: pandering  to civil rights organizations by characterizing the target employer as "racist", "anti-immigrant" or "gender discriminant;" and using all available media to relentlessly harass the target employer.

35.     Other than Liberato, past and present victims of LWC include the Hot & Crusty

Campaign and The Justice for Moraima Ortiz Campaign which targeted Kenny's Bakery.

Defendants' tactics and disparaging allegations in those campaigns are uncannily similar to

those leveled against Liberato here.

> ### a.  The Hot & Crusty Campaign

36.     As detailed on the LWC website, below is a timeline of the tactics used to

extort worker concessions from the owners of Hot & Crusty:

January 21, 2012:
The Hot & Crusty Campaign goes public after months of underground organizing. Workers from Hot & Crusty deliver a demand letter to management with support from the community in an LWC Day of Action.

April 26, 2013:
LWC members and Hot & Crusty workers speak in the Immigration and Labor Press Conference for OWS May Day, along with others in the May Day Coalition.

May, 1, 2012:
Laundry Workers Center members participate in a May 1st Rally in favor of immigrant and workers' rights.

May 23, 2012:
Victory! The Hot & Crusty Workers win their union election at the National Labor Relations Board and the Hot & Crusty Workers Association is officially recognized.

August 20, 2012:
Hot & Crusty management gives the Hot & Crusty Workers Association 11 days notice that they are closing the store.

August 31, 2012:
On the day that management plans to shut down the 63rd St. Hot & Crusty, Occupy Wall Street members occupy the store for several hours and six "Job Defenders" are arrested. Workers and community members picket and leaflet around the neighborhood. The store is closed and workers locked out.

September 3, 2012:
Workers set up a "Worker Justice Cafe" on the sidewalk outside of the store. Coffee and baked goods are donated by community supporters, including Zabar's and others, and distributed free to passersby.

September 10, 2012:
While workers and community members continue to picket, a new group of investors promises to reopen the store, rehire terminated workers and resume bargaining with the union, the Hot and Crusty Workers Association. The new company proposes to reopen in 2 weeks, and workers commit to continue the picket until the store re-opens.

October 18, 2012:
Members of dozens of labor and immigrant rights rally in solidarity with the Hot and Crusty workers.

October 26, 2012:
Victory! After 55 days on the picket line, the Hot & Crusty Workers Association wins a three year contract guaranteeing many benefits

January 28, 2013
The original members of the Hot and Crusty Workers Association return to work alongside many new members, in a newly renovated Hot & Crusty store.

37.     Indeed as detailed above, LWC used its tactics of extortion to force the owners of Hot and Crusty to sell its store to new owners who were also forced to recognize the LWC and establish an employee union.

### b.  The Justice for Moraima Ortiz Campaign

38.     Similarly, the Justice for Moraima Ortiz Campaign made Kenny's Bakery the object of the LWC's extortionist scheme.  Indeed, the following article published at Workers.org describes how Kenny's Bakery is being coerced into compliance:

**NYC picketers say 'Shame on Kenny Bakery!'**

After working for more than eight years at Kenny Bakery in New York's Washington Heights neighborhood, Moraima Ortiz was fired six months ago for requesting to be paid the minimum wage, an end to physical and verbal abuse, and respect on the job. After she joined the Laundry Workers Center for support, weekly pickets began, though the bosses repeatedly used police to threaten protesters, who chanted "¡Vergonzoso!" (shameful).

**On May 12, two police again tried to stop a picket, but LWC organizer Mahoma López and other supporters stood their ground.** The police said picketers had to get a permit. Not true, explained López. Then they said the picket could only last for 45 minutes. Finally, after the cops left, the picket resumed for over an hour more.

> **Support grew for Ortiz as shoppers read the bilingual flier that explained labor violations by Kenny Bakery's bosses. To demand that Moraima Ortiz get paid for stolen wages (back pay at the minimum wage) and to stand up for workers rights, especially women's rights, call Kenny's manager Iris Minaya at 212-569-8414.** (emphasis added)

39.     In each of the instances above the same play-book has been employed in order to extort the targeted employers into monetary and other concessions.

### iii.   Recruitment for the Liberato Campaign:

40.     According to Affidavits filed with the NLRB, Mr. Ramirez was recruited to work with the LWC by Messrs. Aran and Garfias at a meeting a meeting in a church. Thereafter, thereafter he started recruiting other Liberato employees to join him and the LWC in its conspiracy.

41.     Pablo Rutilio, a friend, and Magdalena Crecencio, a roommate, of Mr. Ramirez were recruited next. All three also worked at Liberato's 1 W 183rd Street Location.

42.     Thereafter, the Individual Defendants reached out to as many past and present employees of Liberato Restaurant as they know. In particular, they visited nearly every employee who worked the morning shift at the 1W 183rd Street Restaurant.

43.     In a typical scenario the Individual Defendants would invite themselves to an employee's house. Once there they would press the employee to join their organization and to join in action against Liberato Restaurant. In order to convince the employees, and without knowing the details of each person's employment, the Individual Defendants would assure each employee that they were owed tens of thousands of dollars based on length of employment.

44.     They assured the employees that once they joined victory was certain to occur quickly and that they would be receiving their money in two months, tops. As proof of this

they touted that Defendant Garfias, had received a settlement of $500,000 after just two months of protest.  Mr. Aran assured everyone that the LWC's tactics were so effective that no employer has yet to resist past the first few months.

45.      Should the employee be hesitant the Individual Defendants were quick to assure them that they would also provide help with their immigrations status; ensuring some people that they had friends within government that could help.

46.      For others, such as Liberato Restaurant's deliveryman, the Individual Defendants offered to find him a new job with a competitor if he agreed to join them.  Once he declined, the Individual Defendants threatened that they would come after his job once Mr. Liberato lost the case that they had started against him.

47.      Notwithstanding these high pressure sales tactics, most Liberato employees refused to join the LWC.  Indeed, even today after extensive publicity, protest and recruitment plaintiffs in *Ramirez, et. al v M L Restaurant Corp, et. al*,  Ca No. 14-cv-4030 (SDNY) (the "Ramirez Action") only number 14 out of the potentially hundreds of current and former Liberato employees.[1]

#### iv.  LWC's demands: once in can't get out

48.      Once they agreed to become part of the Liberato Campaign, all of the employees were also signed up to be part of a litigation.

49.      In exchange for its efforts the LWC requires that each person pay the LWC a weekly fee in order to keep the organization going.

50.      If/when a member is no longer interested in being part of the litigation, that person is told that they cannot back out because they signed an agreement that forbids them to

---

[1] Even this number is skewed given that most of the plaintiffs (10 out of the 14) are former employees who were gone over a year and never chose to take action until LWC recruited them.

do so.

## II.   THE LIBERATO CAMPAING: A PATTERN OF RACKETEERING ACTIVITY

51.     Beginning in early April 2014 and continuing up to and including the present, as stated more fully herein, the Defendants conspired to and did manage to obstruct and affect Liberato's engagement in commerce through a pattern of racketeering activity intended to extort moneys from Liberato.  The racketeering activity includes, but is not limited to, the following:

    (a)    acts or threats involving extortion that are indictable under the Hobbs Act (18 U.S.C. § 1951);

    (b)    acts of trespassing that are indictable under New York Penal Law §§ 140.10 and 140.15; and

    (c)    acts of stalking that are chargeable under New York Penal Law §120.45 and New Jersey Criminal Code § 2C:12-10; and

    (d)    acts of harassment that are chargeable under New Jersey Criminal Code § 2C:33-4.

52.     Defendants further conspired to extort money and inflict harm on Liberato through threats of property damage, defamation, filing numerous frivolous and objectively baseless complaints to the NLRB, local politicians, and unlawfully interfering with Liberato's existing and prospective business relations.

53.     Additionally, Defendants have targeted those employees that they believe to be most loyal to Liberato in order to harass and defame them.  Indeed, in addition to the acts committed against Plaintiffs Gomez and Vallejo (described herein), Defendants orchestrated the filing of a Federal Complaint against Liberato that includes as plaintiffs individuals who don't work at Liberato and whose names aren't even known, with the sole intention of harming their reputation and hurting Liberato.

54.     This pattern of racketeering activity was coordinated by the LWC and the Individual Defendants named herein.

55.     The object of Defendants' acts, extortion and infliction of damage upon Plaintiffs was and is to drive Liberato out of business by causing its employees, job applicants and management to fear for their safety and by causing Liberato's customers to cease doing business with Liberato out of fear for their own well-being, unless they could obtain money and property from Liberato, including but not limited to the following: higher wages, vacation pay, longer break periods, unionization and the implementation of a formal employee grievance process, none of which demands are required by New York Law.

56.     Each of the Defendants has participated in, authorized, or ratified the racketeering activity. At all relevant times, those individuals who personally committed the illegal acts acted as agents of the LWC. The LWC and all of its officers approved of the racketeering acts, participated actively or by knowing tolerance in the racketeering acts, and intentionally drew upon the extortionate racketeering acts for their force. The LWC has been actually made aware of the racketeering acts and, despite having the appropriate power and authority, failed to act on that knowledge to prevent or to curb further criminal acts.

57.     The predicate acts of extortion, threats of property damage, defamation, filing numerous frivolous and objectively baseless complaints to the NLRB and local political figures, and unlawfully interfering with Liberato's existing and prospective business relations are explained in more detail in the following paragraphs.

   **A.**  **Liberato Campaign Take 1:** Terror, Harassment, and Coercion Begins With Trespass, the "Rude Mechanical Orchestra," and Menacing of Patrons, Management and Employees

58.     The public campaign of extortion against Plaintiffs is identified on LWC's website as the "Liberato Restaurant Campaign," (hereinafter, the "Liberato Campaign").

59.     On April 19, 2014, the Individual Defendants, hundreds of members of the LWC and a motley crew of musicians banging drums and referred to as their "Rude Mechanical Orchestra," began their campaign to terrorize, harass, and coerce Plaintiffs by filing into Liberato Restaurant at 1 W 183rd Street, occupying the establishment, and refusing to leave when asked to do so by management.

60.     The Defendants entered the premises in two waves.  The first wave, comprised of twelve LWC members, entered the dining room representing themselves as customers, sat at their table, and toasted their waters to the employees at Liberato Restaurant.  Shortly thereafter, dozens of other protesters stormed through the front door while being led by the "Rude Mechanical Orchestra" – composed of several drummers, a trombone player, and several clarinets – playing deafening, off-key, and disruptive noise specifically and intentionally designed to torment patrons and create an unpleasant environment, so as to deter patrons from returning and damaging plaintiff's business.

61.     Moments later Mr. Aran charged in with placard in hand demanding justice and peace now, as his followers began chanting protest rhetoric and the group took over the main entrance and serving area of the restaurant.

62.     When the protesters were told to leave the premises by management, they refused to comply, instead choosing to create a spectacle so as to prevent patrons from eating their meals in peace.  Moreover, the Defendants accommodated themselves and their supporters in front of the main entrance in order to block the free ingress and egress of patrons through the main entrance.

63.     In furtherance of their cause, and while Mr. Aran was directing activities inside the restaurant, Mr. Garfias was directing traffic outside of the restaurant.  Specifically, Mr. Garfias was directing reporters and cameramen outside of the restaurant and leading the chants of ridicule against anyone that came in and out of the restaurant or that spoke favorably on behalf of Mr. Liberato.

64.     Defendants' illegal actions were hailed by its LWC organizers as a victory and a video of the first strike in the "Liberato Restaurant Campaign" was subsequently published on youtube and on LWC's website for all to see:

- https://www.youtube.com/watch?v=i0YQperHpJc (video shows Mr. Aran, in the Red hat, leading the trespass into Liberato Restaurant)

- http://lwcu.org/campaigns/liberato-restaurant-campaign/  (Video shows Mr. Garfias leading the protest.  At Minute 10:52 Mr. Garfias can be seen using his camera as a weapon of harassment as he seeks to embarrass Mr. Miguel Montas who was inquiring as to what was happening.)

65.     Eventually Defendants ended the protest but not before leaving with management a letter listing an exorbitant number of violations that had been allegedly committed against the employees and threatening to sue if they were not addressed within 10 days.

66.     Prior to this ordeal, Plaintiffs were not aware of potential worker unrest within Liberato Restaurant.  Moreover, no plaintiff had never heard of the Defendants, and not a single worker on whose behalf Defendants claimed to speak had ever communicated any of these purported problems to them.

> **B.     Liberato Campaign Take 2:** Stalking and Harassment via the Dissemination of Plaintiffs' Telephone Numbers to Encourage Constant Calling Filled With Screams and Hostility

67.     After that initial day of protest Defendants tactics increased in intensity and

16

illegality.

68.      One of Defendants' preferred tactics, in their impermissible campaign to harass

and terrorize plaintiffs, involves disseminating plaintiffs' telephone numbers (including Mr.

Liberato's non-public personal cell phone number) via the internet, various social media

channels such as Facebook, and encouraging people to call to complain.  Specifically,

Defendants publicly call on all of the members of the LWC, members of affiliated

organizations, members of the public, and anyone else who may be interested to continuously

call and demand an end to allegedly abusive labor practices. See such advertisement links and

posts below:



**Laundry Workers Center**
April 21

EMERGENCY ACTION, LIBERATO RESTAURANT
PHONE BANKING: "NO RETALIATION"

Yesterday, Liberato Restaurant began actions against its workers. Please call
the company and let it a clear and strong message: WE WILL NOT
TOLERATE ANY KIND OF RETALIATION AGAINST WORKERS. ALSO IF THE
MANAGER START HARASS THE WORKERS WE WILL TAKE LEGAL
ACTIONS AGAINST THEM.

HERE THE INFORMATION

DATE: TODAY MONDAY, APRIL 21
TIME: 12:00-2:00PM
PHONE NUMBER: 718-584-5000
MANAGER NAME: NELSON



Solidarity Campaigns ▾     Get Involved     Toolbox ▾     About Us ▾     Action

# EMERGENCY ACTION: Call Liberato's Owner and Defend Worker Organizing

*5/28/2014*



**BREAKING**: Bronx restaurant Liberato just threatened to fire two workers organizing with the Laundry Workers Center against wage theft, sexual harassment, and abuse.

**HOW CAN YOU HELP**: Call Liberato's owner Manuel Antonio Liberato at cell 201-218-1811

TONIGHT (5/28) 5-9pm and tell him we won't tolerate the dismissal of any workers from the organizing campaign.

Phone busy? That's a good sign–keep trying until you get through! Threatening workers is totally unacceptable!

*–Suggested script–*

Good Afternoon, May I speak to Manuel Antonio Liberato? I am calling on behalf of NYC community to tell you that we will not tolerate the dismissal of Maggy or Angie or any other employee who is member of the organizing campaign. The dismissal of any employee will be against our community. We hope that you reach a solution soon with the workers.
Mobile: 201-218-1811

Buenas tardes, ¿ Está el Sr. Manuel Antonio Liberato? Le estamos llamando por parte de la comunidad de Nueva York para decirle que no toleraremos el despido de Maggy o Angie o cualquier otro trabajador que forme parte de la campaña organizativa. El despido iría en contra de nuestra comunidad. Esperemos que lleguen a una solución lo más pronto posible.
Møvil 201-218-1811

Note that this last flyer publicized Mr. Liberato's non-public personal cell phone number. Moreover, neither of the two employees mentioned in the campaign were ever threatened with termination of employment.  Also note the use of the sham organization "99 Pickets", which is used by LWC with the intention of portraying the involvement of other outside entities as spontaneous and independent, even though LWC membes Ramirez and Garfias appear front and center.

69.    As a result of this conduct, Liberato Restaurants' telephones have been jammed up for hours and days, preventing legitimate customers from calling in their orders and thus obstructing commerce.

70.    Moreover, during one stretch, after Mr. Liberato's personal cell phone was handed out publicly, he received approximately eighty (80) harassing phone calls in the span of just one hour, thus prompting him to cancel his service and change his personal telephone number.

C.    **Liberato Campaign Take 3:** Organize Bi-Weekly Protests Aimed at Financially Harming Plaintiff's Businesses by Discouraging Potential Patrons from Entering and Eating at the Restaurants

71.    After attacking plaintiffs and management directly, via disturbances inside the restaurants and harassing telephone calls, Defendants focused their attention on the patrons of Liberato Restaurant.

72.    Since April 2014 Defendants have been organizing and conducting bi-weekly protests in front of Liberato Restaurant on Tuesdays and Thursdays from 10AM to 12PM and 5PM to 7PM each day.  As evidenced below, Defendants have led protests whose sole purpose is to yell at potential patrons in order to discourage them from entering the establishment:



73.     Again, Defendants, acting via the sham organization 99 Pickets, make the false allegation that Liberato threatened the employees with contacting Immigration and Customs Enforcement (ICE) in order to garner a greater wrath against Liberato and its patrons.

74.     At these gatherings, Defendants seek to defame Messrs. Liberato and Gomez by chanting slogans calling them faggots and sexual harassers.  Among the LWC's favorite slogans is one that says "Quien es Liberato? Un Ladron! Quien es Liberato? Un Maricon!" ("Who is Liberato? A thief! Who is Liberato? A faggot!")

75.     As a result of the Defendants conduct Liberato has been severely impacted as patrons seeking a quiet dining experience are turned away by the insults hurled at them and at Plaintiffs.

**D.** **Liberato Campaign Take 4:** Extort Liberato through *litigation*

76.     Once becoming apprised of the alleged worker discontent Liberato agreed to meet with the employees at the forefront of the protest. Unaware that LWC was coordinating all efforts, Mr. Liberato agreed to include them in the meetings as well. At sessions Defendants Aran and Garfias were present.

77.     After two meetings with some of the allegedly disgruntled employees it became clear that LWC was the one in calling the shots and that the employees were there merely for show. LWC pushed to take control of the negotiations and made demands far beyond the initial concerns of the employees or the requirements of New York Law, including among other things demanding, vacation pay, longer breaks, and the establishment of a grievance process to address worker concerns. In retrospect, it's evident that they were laying the groundwork for the establishment of a union.

78.     Having failed to reach an agreement, LWC's attorneys filed a Fair Labor Standards Act (FLSA) complaint against Liberato on behalf of the allegedly aggrieved employees.

79.     The Complaint, which has been amended three times since its initial filing on June 4, 2012, seeks to exert pressure on Liberato by naming as defendants people who don't exist, people who do not work at Liberato, and people whose names are not known. In short, they don't qualify as "employers" under the FLSA.

80.     The sole purpose of the complaint is to harass Mr. Liberato and those perceived to be closest to him in order to coerce Liberato into a settlement with the LWC.

**E.** **Liberato Campaign Take 5:** Post Flyers All Over The Neighborhood, In Spanish, Saying That Mr. Liberato Is A Criminal, Labeling Him A "Thief," And Accusing Him Of Stealing Wages

81.     Having failed to obtain a quick victory, the LWC stepped up its accusations against Liberato by creating flyers in Spanish in order to publish false statements about Mr. Liberato.

82.     On or about June 10, 2014, Defendants started illegally posting flyers (on lamp posts, train stations, etc. in violation of NYC Law), in Spanish, with a picture of Mr. Liberato, and calling him a wage thief.

83.     No longer content to inform people that these are merely allegations, Defendants seek to circumvent the restrictions of the First Amendment's limitations on free speech by posting a picture of Mr. Liberato, and under it, saying as follows:

> Manuel Antonio Liberato is the owner of Liberato Restaurant. **This restaurant has illegally withheld the salaries of its employees.** Please call and **tell him to Stop Stealing Salaries!** (718) 716-6200 or (718) 584-5000. (Emphasis added)

# ¡Nuestra Comunidad!





Manuel Antonio Liberato

## ¡Restaurante Liberato!

**1 oeste de la calle 183, Bronx, NY**

**10 oeste avenida Burnside, Bronx, NY**

### ¡Violaciones!

➢ Al parecer, no pagaba las horas extras a sus trabajadores despues de haber trabajado más de 40 horas.

➢ Al parecer, no pagaba el salario mínimo a sus trabajadores de propinas y sin propinas.

➢ Al parecer, no proporcionó un entorno de trabajo seguro para sus trabajadores.

➢ Al parecer, un administrador ha acosado sexualmente algunas de sus empleadas.

Manuel Antonio Liberato es el dueño del Restaurante Liberato. Este restaurante ha retenido ilegalmente los salarios de sus trabajadores. Por favor llame y dígale a él que Pare el ¡Robo de Salarios! (718) 716-6200 o (718) 584-5000

### ¡Violaciones!

➢ Al parecer, las propinas de los trabajadores fueron malversadas por la administración del restaurante.

➢ Al parecer, un trabajador fue despedido cuando intentó hablar de su salario mínimo.

➢ Al parecer, una empleada fue golpeada por uno de los gerentes del restaurante.



Para más información, contactar al **Centro de Trabajadores de Lavanderías**: 347-629-6748 o justice@lwcu.org.

23

Note the introduction to the flyer: Theft of Wages ("Robo de Salario") at Liberato Restaurant. Also note the attempt to exploit genuine social and political concerns by tailoring the allegations to a specific audience, namely the Spanish speaking and immigrant patrons of Liberato Restaurant.

84.     As evidenced above the Defendants wrote their sign in Spanish in order to skirt the First Amendment's limitations on free speech, namely that prohibition against making false statements.  Moreover, the poster is intended to intimidate Mr. Liberato into complying with Defendants' demands by invading his privacy, smearing his name, and fatally injuring and harming his business, by interfering with Liberato's business relationship with its patrons.

85.     As detailed above the Defendants have demonstrated an escalating pattern of hostility, harassment and intimidation aimed at bullying the plaintiffs into submitting to their demands.  Their unlawful actions have caused and continue to cause irreparable harm to Plaintiffs.

**F.     Liberato Campaign Take 6:** Stalking and Harassing Mr. Liberato at home

86.     Having failed in their objective of obtaining a quick victory/extortion of Liberato, Defendants modified their tactics.  Defendants are now stalking and harassing Mr. Liberato at his home.  Indeed the flyer below was placed on every windshield within a two block radius of Mr. Liberato's residence in Fort Lee, New Jersey.  In addition, the flyers were posted in the lobby to his building and on the light posts around his neighborhood.

87.     The message is clear – we will stalk you and we will harass you wherever you go.