UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

MANUEL ANTONIO LIBERATO, M L RESTAURANT,
CORP., M.L. SAN JOSE ENTERPRISES, CORP., d/b/a
LIBERATO RESTAURANT, NELSON GOMEZ, and
SARAH VALLEJO,

                          Plaintiffs,

    -against-

LAUNDRY WORKERS CENTER UNITED, VIRGILIO
OSCAR ARAN, ROSANNA RODRIGUEZ ARAN,
MAHOMA LOPEZ GARFIAS, OSCAR RAMIREZ,
PABLO RUTILIO, and MAGGIE ANDRES CRECENCIO

                          Defendants.

-------------------------------------------------------------------------x

**No.: 15 CV 00326 (VEC)**

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT

Law Offices of Jeanne E. Mirer, PLLC
By: Jeanne E. Mirer
1700 Broadway, 21st Flr.
New York, NY 10019
212-231-2235
Attorneys for Defendants
jeanne@jmirerlaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………iii

INTRODUCTION……………………………………………………………………………1

RULE 12(B)(6) STANDARD OF REVIEW …………………………………………………1

ARGUMENT

I. ALL CLAIMS AS TO DEFENDANTS RAMIREZ, RUTILIO AND ANDRES CRECENCIO ARE PREEMPTED UNDER *GARMON*……………………………………………………3

II. THE RICO PLAINTIFFS' CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW FOR LACK OF STANDING …………………………………………………………………5

    A. RICO PLAINTIFFS' CLAIMS MUST FAIL ON THE INDEPENDENT GROUND OF LACK OF STANDING UNDER 18 US 1962 (c) AS TO ALL DEFENDANTS UNDER COUNT I……………………………………………5

    B. RICO PLAINTIFFS' LACK OF STANDING AS TO COUNT I UNDER 18 USC 1962(c) IS FATAL TO RICO PLAINTIFFS' STANDING AS TO THE CONSPIRACY COUNTS II AND II ……………………………………………6

III. THE RICO PLAINTIFFS' CLAIMS MUST FAIL AS A MATTER OF LAW FOR INSUFFICIENCY AS TO THE REQUISITE ELEMENTS ………………………………6

    A. RICO PLAINTIFFS' 18 USC §1962(c) CLAIM AS TO DEFENDANT LAUNDRY WORKERS' CENTER FAILS AS A MATTER OF LAW FOR LACK OF DISTINCTNESS …………………………………………………7

    B. RICO PLAINTIFFS' "PREDICATE ACTS" OF THE "RACKETEERING ACTIVITY" UNDER RICO FAIL AS A MATTER OF LAW AS TO COUNT 1………………………………………………………………………8

        i. RICO Plaintiffs' Alleged State Law "Predicate Acts" Of The Purported Racketeering Activity Fail As A Matter Of Law ………8

        ii. RICO Plaintiffs Fail To Allege Elements Of Extortion Sufficient To Satisfy The Hobbs Act As A Matter Of Law…………………………9

            a. Defendants' Nonviolent Acts Are Extortionate "Fear Of Economic Harm" Only If Done In Pursuit Of A Wrongful Aim…………………………………………11

            b. Rico Plaintiffs Good Faith Belief As To Moneys Lawfully Due To Them Is A Lawful End As A Matter Of Law…………………………………………12

            c. Defendants' Purportedly Extortionate Activities Are Not Wrongful For They Seeks Legitimate Labor Ends Under *Enmons* ………………………………13

d. In The Alternative, Allegations Of Defendants' Extortion Of "Business Control" Fail To State A Claim To Property Cognizable Under The Hobbs Act ....................................................15

C. RICO PLAINTIFFS' ALLEGED "PATTERN" OF THE "RACKETEERING ACTIVITY" IS LEGALLY INSUFICIENT TO ESTABLISH A 18 USC 1962 (c) CLAIM AS TO ALL DEFENDANTS AS TO COUNT I...........................16

    i. The Operative Facts Alleged Do Not Provide Any Predicate Acts...............................................................16

    ii. RICO Plaintiffs Have Failed to Plead Two Predicate Acts as to Each Defendant.................................................19

D. NO CONSPIRACY IS SUFFICIENTLY PLEAD UNDER 18 USC 1962 (D)...20

IV. ALL OF PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED...................22

    A. THIS COURT SHOULD EXERCISE ITS DISCRETION TO ABSTAIN FROM HEARING THE DUPLICATIVE STATE LAW CLAIMS............22

    B. THE STATE LAW CLAIMS MAY BE BARRED BY COLLATERAL ESTOPPEL AS TO THE LWC OFFICERS.......................................23

    C. EVEN IF THE COURT DOES NOT ABSTAIN, THE PARALLEL STATE LAW COUNTS MUST BE DISMISSED AS A MATTER OF LAW AS TO THE LWC OFFICER DEFENDANTS ...........................................23

    D. THE CLAIM FOR CIVIL CONSPIRACY MUST BE DISMISSED AS TO ALL DEFENDANTS.............................................................23

    E. THE CLAIM FOR TORTIOUS INTERFERENCE MUST BE DISMISSED AS TO ALL DEFENDANTS....................................................24

CONCLUSION

*United States v. Strum*, 870 F.2d 769 (1st Cir. 1989) .................................................12

*Viacom Int'l, Inc. v. Icahn,* 747 F.Supp. 205, 213 (S.D.N.Y.1990) .............................12

*World Wrestling Entm't. Inc. v. Jakks Pac, Inc.*, 530 F. Supp. 2d 486
    (S.D.N.Y. 2007) ...............................................................................................5, 21

*Zito v. Leasecomm Corp., 2003 U.S. Dist. LEXIS 17236, 1, 2003 WL 22251352*
    *(S.D.N.Y. Sept. 30, 2003)* ....................................................................................17

## STATUES AND RULES

18 U.S.C. § 1951(b)(2) ................................................................................................*Idem*

18 U.S.C. § 1961 .........................................................................................................*Idem*

18 U.S.C. § 1962 .........................................................................................................*Idem*

FRCP 12(b)(6) ....................................................................................................................1

N.J. CRIM. CODE § 2C:12-10 .....................................................................................7, 9

N.J. CRIM. CODE § 2C:33-4 .......................................................................................7, 9

N.J. REV. STAT. § 2C:43-1 (2013) .............................................................................7, 9

N.Y. PEN. LAW § 140.10 ............................................................................................7, 9

N.Y. PEN. LAW § 140.15 ............................................................................................7, 9

N.Y. PEN. LAW § 155.05 ..............................................................................................14

N.Y. PEN. LAW § 70.15 ...................................................................................................9

N.Y. PEN. LAW § 120.45 ............................................................................................7, 9

29 U.S.C. § 157...................................................................................................................3

**TABLE OF AUTHORITIES**

CASES

*American Baptist Churches of Metro. N.Y. v. Galloway*, 271 A.D.2d 92 ....................................24
*American Preferred Prescription, Inc. v. Health Mgmt., Inc.,* 252 A.D.2d 414
    (1st Dept.1998) .............................................................................................................24
*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .............................................................2, 22
*Brokerage Concepts v. U.S. Healthcare*, 140 F.3d 494 (3d Cir. 1998) ...............................12
*Calabrese v. CSC Holdings, Inc.,* 283 F. Supp. 2d 797 (E.D.N.Y. 2003) .........................13
*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) ...........................................8
*Cintas Corp. v Unite Here*, 601 F.Supp.2d 571 (2009). ..............................................14, 15
*City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616 (2009) ...................................8
*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999).................21
*Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976)..................22
*Connolly v. Havens*, 763 F. Supp. 6 (S.D.N.Y. 1991) ...........................................................21
*De Falco v. Bernas*, 244 F.3d 286 (2d Cir. N.Y. 2001) ........................................................13
*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ...............................................2
*Ferolito v. Menashi*, 918 F.Supp.2d 136 (E.D.N.Y. 2013)..................................................23
*George Lussier Enters. v. Subaru of New England*, 393 F.3d 36 (1st Cir. 2004)..................12
*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ..............................7,8
*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992) .....................................................7
*Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383 (S.D.N.Y. 2000) ...............................13
*Keller v. Levy*, 265 A.D. 723 (1st Dept.1943) ...................................................................24
*Kerik v. Tacopina*, 2014 U.S. Dist. LEXIS 167446 (S.D.N.Y. Dec. 2, 2014)........................5
*Linens of Eur., Inc. v. Best Mfg.*, 2004 U.S. Dist. LEXIS 18575 (S.D.N.Y. Sept. 15, 2004).......20
*M.J. & K. Co., Inc. v. Matthew Bender and Co., Inc.*, 220 A.D.2d 488, 631 N.Y.S.2d 938 .......25
*Makowski v. United Bhd. & Joiners of Am.*, 2010 U.S. Dist. LEXIS 77775,
    (S.D.N.Y. Aug. 2, 2010) .................................................................................................7
*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008) .................................5, 6
*McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992) ...............................................20
*Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003)........................................5
*Naso v. Park*, 850 F. Supp 264, 275 (S.D.N.Y. 1994)........................................................21
*NBT Bancorp v. Fleet/Norstar Fin. Group*, 87 N.Y.2d 614, 621, 641 N.Y.S.2d 581,
    664 N.E.2d 492 ..............................................................................................................25
*Niagara Mohawk Power Corp. v. Testone*, 272 A.D.2d 910.................................................24
*Port Dock & Stone Corp. v. OldcastleNortheast, Inc.*, 507 F.3d 117 (2d Cir. 2007)..................2
*Scheidler v National Organization for Women*, 537 U.S. 393 (2003)..............................15, 16
*Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, (1985).............................................7
*Street Beat v Sportswear v National Mobilization against Sweatshops*,
    698 N.Y.S.2D 820 (1999)...............................................................................................25
*United States v. Capo*, 817 F.2d 947, 951 (2d Cir. 1987)....................................................12
*United States v. Clemente*, 640 F.2d 1069 (2d Cir. 1981) ..........................................11, 12, 13, 14
*United States v. Enmons*, 410 U.S. 396 (1973)...........................................................11, 12, 14, 15
*United States v. Jackson*, 180 F.3d 55 (2d Cir. 1999) .........................................................13

## INTRODUCTION

The corporate plaintiffs and Manuel Antonio Liberato (hereafter "the "RICO Plaintiffs")

bring three counts under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18

USC §§ 1961-68 as to all defendants, three officers of the Laundry Workers Center (hereafter

"LWC Officers"), and three LWC members who are also former and present Liberato workers

(hereafter "Workers"). Additionally, all plaintiffs ("Plaintiffs") bring seven (7) state tort claims

on a theory of supplemental jurisdiction as to all defendants. (See State Court Complaint, Exhibit

1). Of these state claims, five (5) (Counts V, VII, VIII, IX, and IX[sic]) are identical to the

claims before the New York Supreme Court filed by Plaintiffs in July 2014 against the LWC

Officers (See Motion to Dismiss State Court Actions, Exhibit 2).

The LWC and individual defendants bring this motion to dismiss the complaint in its

entirety. As will be argued more fully below, the claims must be dismissed for a host of legal

insufficiencies, each of which is independent and sufficient ground for dismissal. Plaintiffs do

not and cannot plead any set of facts to support their claims as Plaintiffs seek legal redress where

there is no legal injury. Stripped to its operative facts, the complaint supports finding that

defendants have used only lawful means in their campaign of public opinion and economic

pressure to secure Plaintiffs' compliance with the law. Aggravated by this pressure, Plaintiffs

have sought to cast "pressure" as "extortion," "concerted activity" as "conspiring," and "protest"

as "tort." Though Plaintiffs may feel persecuted and harangued, they have yet to allege

cognizable harm. In fact, it is defendants who are harmed by this retaliatory attempt to

criminalize legitimate protest and First Amendment activities.

## RULE 12(B)(6) STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint the Court must accept

the well- pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996). However, to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…". *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted and alteration in original). Rather, as the Supreme Court explained in *Twombly*, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Second Circuit has described *Twombly* as requiring that "a complaint … allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).

## ARGUMENT

Through the use of overwrought adjectives, RICO Plaintiffs seek to give legal life to little more than heated protest activities (Compl. ¶¶ 34, 45, 59, 60, 62, 63, 68, 71, 72, 76, 79, 85, 92, 94, 113). Throughout the complaint RICO Plaintiffs mention "terror," "harassment", and "coercion" and that RICO Plaintiffs' employees, and managements "fear for their safety"; customers' "fear for their wellbeing"; plaintiff Vallejo's "fear for her life." It is telling then that the complaint does *not* contain a single allegation that defendants have used the means of "actual or threatened force [or] violence" proscribed in the Hobbs Act, 18 U.S.C. § 1951(b)(2) in pursuit of their goals, nor have plaintiffs offered more than threadbare recitations of harm. At best, Plaintiffs allege "fear of economic loss" and use of "pressure" by defendants to obtain plaintiffs compliance with state and federal law (Compl. ¶ 109). As established below, defendants' activities are not only lawful, but constitute the exercise of their protected rights. Implicating

2

rights protected by the NLRA, this court should decline to exercise jurisdiction over this suit as to the Workers. If this court sees fit to exercise jurisdiction, it should dismiss all plaintiffs' claims with prejudice. Defendants have engaged in no more than exercise of their protected rights.

## I. ALL CLAIMS AS TO DEFENDANTS RAMIREZ, RUTILIO AND ANDRES CRECENCIO ARE PREEMPTED UNDER *GARMON.*

This court should decline jurisdiction over all of these claims as to the Workers. By taking part in activities which are aimed at securing improvements in their wages hours and working conditions, Workers Ramirez, Rutilio and Andres Crecencio are exercising their rights under Section 7 of the National Labor Relations Act. Section 7 protects employees' rights to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection [.]" 29 U.S.C. § 157. The actions Liberato plaintiffs allege are illegal extortion and violations of state law as to Ramirez, Rutilio and Andres Crecencio include their filing claims with the NLRB. As announced by the Supreme Court in *San Diego Building Trades Council v Garmon,* 359 U.S. 236, 241, (1959) where a state or federal court action implicates activities regulated by National Labor Relations Act the question of preemption arises. As discussed by the Court of Appeals recently: "[P]reemption would obviously be required '[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8.'" *Healthcare Ass'n of N.Y. State v. Pataki,* 471 F.3d 87, 94-95 (2d Cir. 2006) (citation omitted).

Here the NLRA is directly implicated as defendants filing of NLRB charges is itself deemed by plaintiffs as "Other Acts in Furtherance of the Conspiracy" (RICO Complaint paragraphs 98-107). That is, plaintiffs take the position that a right protected by statute, which is fundamental to the goals of the National Labor Relations Acts, may be an act in furtherance of a conspiracy."

3

Further, it is not fatal to *Garmon* pre-emption that Workers' protest activities were not in support of a union organizing, as the scope of Section 7 rights is not limited to the right to unionize but also includes "mutual aid and protection." Further, as *Healthcare Ass'n of N.Y. State v. Pataki* reminds us, "*Garmon* extended preemption: "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Where it is not clear whether Section 7 or 8 rights are implicated "the courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations left in the first instance to the National Labor Relations Board." *Garmon, supra* at 359 U.S. 236, 244-245

For a finding of *Garmon* preemption courts next "must decide whether the controversy is identical to one that the aggrieved party could bring (or induce its adversary to bring) before the NLRB. If not, the State's action could still be preempted, but only if there is a strong showing that the State has interfered with the protections offered by section 7 or 8 of the NLRA. Finally, courts consider whether the regulated conduct touches interests "deeply rooted in local feeling and responsibility," 359 U.S. at 244. Here, even if *arguendo* the controversy is not identical to that brought before the Board, there is no question that in acting together to improve their wages and working conditions, the Workers are engaging in conduct that is absolutely protected by and pre-empted under the National Labor Relations Act. Defendants' attempts to interfere with Board protections could not be stronger. Even though in this Circuit the courts have not claimed that the NLRA preempts a RICO claim, there are no policy reasons given the facts of this case for the claims of the three worker defendants not to be considered preempted. This is especially true since the NLRB has decided to go to complaint on the claims made by these three workers.

4

Accordingly, all claims against defendants Ramirez, Rutilio and Andres Crecencio (Counts IV-

IX[sic]) are preempted and fail for lack of subject matter jurisdiction.

## II. THE RICO PLAINTIFFS' CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW FOR LACK OF STANDING

### A.  RICO PLAINTIFFS' CLAIMS MUST FAIL ON THE INDEPENDENT GROUND OF LACK OF STANDING UNDER 18 USC 1962(c) AS TO ALL DEFENDANTS UNDER COUNT I.

At the pleadings stage, to establish standing in a RICO suit, plaintiff must plead "(1) a

violation of section 1962; (2) injury to business or property; and (3) causation of the injury by

the violation.'" *Motorola Credit Corp. v. Uzan,* 322 F.3d 130, 135 (2d Cir. 2003). See also, *Kerik*

*v. Tacopina,* 2014 U.S. Dist. LEXIS 167446, 19 (S.D.N.Y. Dec. 2, 2014) (granting motion to

dismiss RICO claim for lack of standing). The private right of action pursuant to which RICO

Plaintiffs have brought Counts I, II and III is a right granted to "Any person injured in his

business or property by reason of a violation of section 1962 of this chapter." Given the

"remedial" logic of this section of the act, *World Wrestling Entm't. Inc. v. Jakks Pac, Inc.,* 530 F.

Supp. 2d 486, 521 (S.D.N.Y. 2007), the defendant's racketeering activity must have "caused the

plaintiff to suffer economic loss" *McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 226 (2d Cir.

2008) in the form of injury "to [its] property, and not, for example, physical, emotional or

reputational harm." *World Wrestling Entm't, Inc.,* 530 F. Supp. 2d at 518. In order to confer

RICO standing, the injury must be "actual, quantifiable injury." *McLaughlin,* 522 F.3d at 227,

"concrete and actual,' as opposed to speculative and amorphous." *United Bhd. of Carpenters &*

*Joiners of Am.,.* LEXIS 77775, at *27 (S.D.N.Y. Aug. 2, 2010) (granting motion to dismiss).

Conspicuously absent from RICO Plaintiffs' alleged harm, a complete catalogue of which

follows, is "actual" economic harm. Upon close inspection RICO Plaintiffs' allegation that

defendants wish to "drive Liberato out of business" (Compl. 55), "inflict harm on Liberato"

(Compl. 62 ), "financially har[m] plaintiffs business by discouraging potential patrons," and "yelling" at patrons (Compl. 70, 119) "fatally injur[e] and har[m] his business, by interfering with Liberato's business relationship" (Compl. 84), are not supported by any statement of actual decline in revenues, actual loss of customers, or actual departure of employees. Nor do the boilerplate legal conclusions of harm recited in the Counts (Compl. 134, 140, 146) plausibly allege "concrete and actual" harm. Where harm does not rise to the level of allegations of "actual harm" the quantification of harm required by *McLaughlin* is also absent.

It is no surprise that where no actual harm is alleged the other elements of standing predicated upon harm must necessarily fail, even if one accepts RICO Plaintiffs' ratification theory in lieu of allegations connecting individual defendants to the Operative Facts. *Holmes*, 503 U.S. 258 , 269-70 (1992).

## B.  RICO PLAINTIFFS' LACK OF STANDING AS TO COUNT I UNDER 18 USC 1962(c) IS FATAL TO RICO PLAINTIFFS' STANDING AS TO COUNTS II AND II

As the Second Circuit held in *Hecht v. Commerce Clearing House, Inc.,* standing to assert a RICO conspiracy claim "may be founded only upon injury from overt acts that are also section 1961 predicate acts, and not upon any and all overt acts furthering a RICO conspiracy." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir. 1990)). Accordingly, "if Plaintiffs lack standing to assert substantive RICO claims under § 1962(c), they necessarily lack standing to assert RICO conspiracy claims under § 1962(d)." *Makowski v. United Bhd. & Joiners of Am.,* 2010 U.S. Dist. LEXIS 77775, 27-28, (S.D.N.Y. Aug. 2, 2010).

## III. THE RICO PLAINTIFFS' CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW FOR INSUFFICIENCY AS TO THE REQUISITE ELEMENTS

To establish a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co., Inc.,* 473 U.S.

479, 496, (1985). See also, 18 U.S.C. §§ 1962(c), 1962(d). A "pattern of racketeering activity" requires at least two "predicate acts" in a ten-year period. Liberato and defendant corporations allege four predicate acts: (1) extortion under the Hobbs Act, 18 U.S.C. § 1951; (2) trespassing violations of New York Penal Law §§ 140.10 and 140.15; (3) stalking violations of New York Penal Law §120.45 and New Jersey Criminal Code §2C:12-10; and (4) harassment violations New Jersey Criminal Code §2C:33-4. As shown below the insufficiencies are so numerous as to not amount to a single predicate act, or a single arguably illegal act to support RICO Plaintiffs' claims.

RICO Plaintiffs further allege defendant LWC is an enterprise within the meaning of 18 USC § 1961(4) and 18 USC §§ 1962(c) and (d) (Compl. ¶¶ 132, 139) and that the individual defendants are members of the enterprise who have carried out racketeering activities beginning "in or about April 2014." (Compl. ¶ 25). RICO Plaintiffs further allege that defendants have engaged in a "conspiracy to extort money and property," (Compl. ¶ 25) "higher wages, vacation pay, longer break periods, unionization, and the implementation of a formal employee grievance process, none of which demands are required by NY Law" (Compl. ¶ 55) through a "public campaign of extortion against plaintiffs" (Compl. ¶ 58) designed to "terrorize, harass and coerce" defendants (Compl. ¶ 58, 93). Moreover Plaintiffs allege that defendants "seek to drive Liberato out of business by causing its employees, job applicants and management to fear for their safety and by causing Liberato's customers to cease doing business with Liberato out of fear for their own well being." (Compl. ¶ 55). As established by the arguments below, the RICO Plaintiffs' allegations do not stand up to scrutiny and are deficient as a matter of law.

A. RICO PLAINTIFFS' 18 USC §1962(c) CLAIM AS TO DEFENDANT LAUNDRY WORKERS' CENTER FAILS AS A MATTER OF LAW FOR LACK OF DISTINCTNESS

Defendant LWC is named as the RICO enterprise and a defendant RICO person. RICO Plaintiffs' claims fail to establish sufficient distinctness to satisfy that element of the enterprise test. *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161 (2001) to establish liability under Section 1962(c) requires "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).* Further, "the distinctness doctrine requires a plaintiff to demonstrate that the RICO person is legally separate from the RICO enterprise." *City of New York v. Smokes-Spirits.com, Inc.,* 12 N.Y.3d 616 (2009). As LWC is both the entity and a defendant person, the distinctness requirement is not met as to LWC and the 18 USC 1962(c) claim against this defendant fails in its entirety.

### B. RICO PLAINTIFFS' "PREDICATE ACTS" OF THE "RACKETEERING ACTIVITY" UNDER RICO FAIL AS A MATTER OF LAW AS TO COUNT I.

#### ii. RICO Plaintiffs' Alleged State Law "Predicate Acts" Of The Purported Racketeering Activity Fail As A Matter Of Law

Section 18 USC 1961(1) enumerates the federal statutes that when violated may be considered "predicate acts" of "racketeering activities" within the ambit of RICO. State law violations may be "predicate acts" of "racketeering activity" per RICO where they involve:

> any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion…. and punishable by imprisonment for more than one year. 18 USC § 1961(1)(A).

RICO Plaintiff Liberato bases three of his four alleged predicate acts on state law violations, presumably involving "extortion". However, not one of the state law violations alleged meets the above definition of "racketeering activity" under 18 USC 1961(1).

Of the New York statutes alleged as predicate acts, NY CLS Penal § 140.10, "Criminal Trespass In The Third Degree," is a class B misdemeanor; NY CLS Penal § 140.15, "Criminal Trespass In The Second Degree," is a class A misdemeanor; and NY CLS Penal § 120.45, "Stalking In The Fourth Degree" is a class B misdemeanor. Under N.Y. PEN. LAW § 70.15 Class B misdemeanors are subject to sentences that "shall not exceed three months," whereas Class A misdemeanors "shall not exceed one year." On the facts alleged, where these acts are not second offenses, involving firearms, or done by persons in prison, the statutes do not give rise to predicate acts under 18 USC 1961(1) as a matter of law.

Similarly, both alleged predicate acts based on New Jersey State law violations fail. N.J. Stat. § 2C:33-4 (harassment) is ordinarily punishable by a fine and at most 30 days incarceration. N.J. Stat. § 2C:12-10 (stalking) is designated a fourth degree crime, which pursuant to N.J. Stat. § 2C:43-1 may result in a sentence not to exceed eighteen months, however the statute expressly states, "This act shall not apply to conduct which occurs during organized group picketing." RICO Plaintiffs' accounts of "stalking" all include organized distribution and posting of flyers (Compl. ¶¶ 80, 87) and thus defendants are within the statutory picketing exception.

Even if these statutes were predicate acts, however, the RICO Plaintiffs' claims under such acts are independently deficient for failure to plead that defendants actually participated in such acts as required by traditional principles of criminal liability.

For the above reasons, no RICO claims may lie under such the state law predicate acts and the operative facts going to trespass, stalking and harassment, enumerated *supra*, are rendered inoperative for purposes of defendants' RICO claims.

### ii. RICO Plaintiffs Fail To Allege Elements Of Extortion Sufficient To Satisfy The Hobbs Act As A Matter Of Law

RICO Plaintiffs' claim on a theory of "racketeering activity" by the "predicate act" of violating the Hobbs Act 18 USC 1951 must also fail. The Hobbs Act criminalizes interference with commerce through "extortion" or attempted "extortion," and conspiracy to "extort" defined as "the obtaining of property from another, with his consent, induced by *wrongful* use of actual or threatened force, violence, or fear…". 18 U.S.C. § 1951(b)(2) (emphasis added).[1]

RICO Plaintiff Liberato alleges that the Workers and LWC Officers are engaged in a "conspiracy to extort" (1) money (Compl. ¶2); (2) improved and lawful terms conditions and of employment (Compl. ¶55); and (3) the power to control the business (Compl. ¶1). Despite RICO Plaintiffs' reference to unionization as an aim, there is no allegation anywhere in the complaint that union recognition was sought by defendants. RICO Plaintiffs allege that closing the business is the ultimate aim is similarly unsupported by a pleading of plausible facts or any facts that show more than a vigorous picket or boycott.

In *Enmons*, the Supreme Court held that the applicability of the Hobbs Act "depends on whether the statutorily identified means ('actual or threatened force, violence, or fear') have been put to 'wrongful use.'" *Clemente,* 640 F.2d at 1076 (quoting *Enmons*, 410 U.S. at 400). In determining whether "the wrongfulness element" has been met, it is improper to assess wrongfulness "in a vacuum, independent of" the means used by the defendant to obtain the alleged extortion victim's property. *Id.*

Here the RICO Plaintiffs fail to establish extortion under the Hobbs act on two independent grounds: (1) plaintiffs do not allege violence of threats thereof; and (a) where violence is not alleged seeking monies to which defendants have a good faith claim is not "wrongful" as a matter of law; and (b) seeking workplace reform is a legitimate labor end and

---

[1] In their complaint RICO Plaintiffs make no allegation of any money, property or intangible rights already obtained by defendants, necessarily limiting their claims under the Hobbs Act to attempted extortion and conspiracy.

"not wrongful per se"; (2) seeking to impose one's business judgment on another is not "obtaing property" and may not therefore be extortion.

### a. Defendants' Nonviolent Acts Are Extortionate "Fear Of Economic Harm" Only If Done In Pursuit Of A Wrongful Aim

RICO Plaintiffs' pleadings are devoid of allegation of violence and threats of physical violence. Inasmuch as any "threats" are alleged they are the threat of "going after a [delivery man's] job" (Compl. ¶45), a "threat" of interference with a television broadcast made to Telemundo producers (Compl. ¶113); an "attack" consisting of "screaming" as to Plaintiff Gomez who is not a RICO Plaintiff (Compl. ¶89); "attack[s] on employees and management" by alleged trespassing disturbance in the restaurant and harassing telephone calls (Compl. ¶78)." None of these acts is alleged to be directed towards the RICO Plaintiffs. Inasmuch as RICO Plaintiffs base their allegations of extortion on defendants' creation of fear, such fear is not alleged as to the RICO Plaintiffs but only as to employees and managers, customers, and Sarah Vallejo. Further, though RICO Plaintiffs cast the above activities in terms of "extortion," absent violence or threat thereof, at most the acts rise to the level of "harassment," "pressure," "coercion" and generalized fear of economic loss raised by the protests.

Under *Enmons*, the Defendants have not used a means that is wrongful per se. As the Second Circuit has held, "the element of fear required under the Hobbs Act may be satisfied by 'putting the victim in fear of economic loss.' *United States v. Capo*, 817 F.2d 947, 951 (2d Cir. 1987) (citation omitted). If *arguendo*, RICO Plaintiffs meet this standard of fear, the starting point for evaluating the legal sufficiency of an allegation under the Hobbs Act, being predicated on fear of economic loss, is this Court's decision in *United States v. Clemente*, 640 F.2d 1069 (2d Cir. 1981). A Hobbs Act violation arises under the *Enmons– Clemente* framework when a defendant exploits a plaintiff's fear of economic loss *and receives property to which it has no*

11

*lawful claim. See Viacom Int'l, Inc. v. Icahn*, 747 F.Supp. 205, 213 (S.D.N.Y.1990). However, where the defendant's objective in using "fear of economic loss" is to induce the plaintiff to enter into a "legitimate business transaction[ ]," *Brokerage Concepts v. U.S. Healthcare*, 140 F.3d 494, 523 (3d Cir. 1998), involving an "exchange" of "valuable consideration" between the parties,— the defendant *is* pursuing *a lawful claim* to property, and thus is engaged in "lawful hard-bargaining, not unlawful extortion," *George Lussier Enters. v. Subaru of New England*, 393 F.3d 36, 51 (1st Cir. 2004). ).

In *United States v. Strum*, 870 F.2d 769 (1st Cir. 1989), the First Circuit elaborated on the rational of *Clemente* stating:

> Unlike the use or threatened use of force or violence, the use of economic fear in business negotiations between private parties is not "inherently" wrongful. *Indeed, the fear of economic loss is a driving force of our economy that plays an important role in many legitimate business transactions*. This economic reality leads us to conclude that the reach of the Hobbs Act is limited in cases, such as this one, which involve the use of economic fear in a transaction between two private parties. The limitation we apply is that set forth in *Enmons*: that a defendant is not guilty of extortion if he has a lawful claim to the property obtained. [140 F.3d at 523 (emphasis added) (internal citations omitted).] [2]

As described *infra*, plaintiffs' impugned activities fail to meet the test for wrongfulness necessary ends for a violation of Hobbs extortion to lie where no allegation of violence or physical threat is made.

### b. Rico Plaintiffs' Good Faith Belief As To Moneys As Lawfully Due To Them Is A Lawful End As A Matter Of Law

In *United States v. Jackson* the Circuit Court held that a threat "to cause economic loss is not inherently wrongful; it becomes wrongful only when it is used to obtain property to which

---

[2] Defendants recognize however that the claim of right defense does nt fully exist outside the labor context. In *U.S. v Zappola*, 677 F.2d 264 (2nd Cir 1982) the Court refused to extend the impact of *Enmons* outside the labor context. That is the court found *Enmons* did not create a general "claim of right" defense in all cases involving the use of force or violence. The use of force or violence by *Zappola* was not condoned even though violence was used to coerce payment of a debt.

the threatener is not entitled." *United States v. Jackson*, 180 F.3d 55, 70 (2d Cir. 1999).

Moreover, district courts decide this question as a matter of law. *See also De Falco v. Bernas*, 244 F.3d 286, 316 (2d Cir. N.Y. 2001); *Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 392 (S.D.N.Y. 2000) (granting motion to dismiss RICO on the grounds that no claim for extortion lies "when the defendant had a good faith claim of right to the money sought") (citations omitted); *Calabrese v. CSC Holdings, Inc.*, 283 F. Supp. 2d 797, 809 (E.D.N.Y. 2003) (granting motion to dismiss RICO on the grounds "[T]he use of economic threats to obtain property is wrongful only if the defendant does not have a claim of right to that property.") In both of these cases the rights to such property had previously attached and such previous attachment did not affect the courts' reasoning as to lawfulness. Put differently, the courts do not require a claim of right to be a future right in order for the rule in *Jackson* to apply.

Here, the Workers' good faith claim to wages owed by RICO Plaintiff Liberato renders their nonviolent acts in pursuit thereof lawful under *Jackson* for purposes of *Clemente*. No other plausible claims with regard to moneys sought by defendants are made by RICO Plaintiffs. Accordingly, the RICO Plaintiffs' pleadings, as to the Workers, do not satisfy the definition of extortion under the Hobbs Act. The LWC Officers' support for the Workers' legitimate labor goals to receive their proper wages is also protected. Accordingly the fact that Defendants' activities are not wrongful is fatal to all Hobbs Act claims of extortion.

### c.  Defendants' Purportedly Extortionate Activities Are Not Wrongful For They Seeks Legitimate Labor Ends Under *Enmons*

Plaintiff Liberato further claims that defendants are trying to extort better working conditions from him. The facts plead by Plaintiff Liberato show defendants to be seeking improved conditions at their workplace, including the enforcement of federal and state wage and hour laws and regulations regarding breaks other workplace conditions regulated by state and

local law. These are legitimate labor ends. Even if these improved conditions are not required by labor law, they are not prohibited actions under *Enmons, supra*. Further, it is not an illegitimate labor end for workers to ask Plaintiff Liberato to not only comply with the law regarding pay, but to ensure the health and safety of the workers allowing them to be free from working in conditions of extreme heat or cold depending on the season.

Moreover, the New York legislature has recognized that protest labor activity, including boycott, is not wrongful for purposes of satisfying the elements of extortion under New York state law. New York's extortion statute, NY CLS Penal § 155.05, "strike, *boycott* or other collective labor group action injurious to some person's business could be extortionate; *except that such a threat shall not be deemed extortion when the property is demanded or received for the benefit of the group in whose interest the actor purports to act* [italic added]. *Id.* That is, the penal law exempts boycott from the reach of statutory extortion, even where the acts would otherwise satisfy the elements under the statute where thopse who call for the boycott are acting to benefit the workers.

While RICO plaintiffs do not allege predicate acts under New York's extortion statute, because they cannot, this statutory definition of extortion is consistent with the common law rule in *Clemente-Enmons* which excludes labor activities from the definition of extortion. Further in articulating a broad definition of labor activities, not limited to collective bargaining agreements and extending to third party supports, the state law is consistent with the holding in *Cintas* in which the court held "legitimate labor ends" for purposes of a "wrongfulness" evaluation under should be construed broadly and not be confined to collective bargaining. See *Cintas Corp. v. UNITE HERE*, 601 F. Supp. 2d 571, 574 (S.D.N.Y. 2009) (holding a card check and neutrality legitimate labor ends).

14

Here the impugned protest at Liberato Restaurant is intimately tied to Plaintiff Liberato's alleged violation of the Workers Section 7 rights under the NLRA, and also to Plaintiff Liberato's alleged violations of provisions of the FLSA, NYLL and NYCRR. That is, the Workers and LWC's protests have sought to publicize their allegations that Plaintiff Liberato has not paid wages in accordance to law and subjects the workers to adverse workplace conditions. This objective is a legitimate labor end under *Enmons*, consistent with *Cintas's* reading of the scope of legitimate labor actions and with the definition of extortion under state law excluding boycott activities. It is also consistent with the view that while labor conflict may be burdensome to employer, "[W]ithin the labor context, in seeking to exert social pressure on [plaintiff], the Union's methods may be harassing, upsetting or coercive, but unless we are to depart from settled First Amendment principles, they are constitutionally protected.")" *Cintas Corp. v Unite Here*, 601 F.Supp 2d at 578. Accordingly all defendants' activities are legitimate labor activity, not wrongful, and therefore fatal to all Hobbs Act extortion claims.

### d. In The Alternative, Allegations Of Defendants' Extortion Of "Business Control" Fail To State A Claim To Property Cognizable Under The Hobbs Act

As to the allegations that the LWC and the Workers seek to deprive Plaintiff Liberato of his business imperative, in *Scheidler II*, the Court rejected the argument that defendants' *depriving* plaintiffs of their right to exclusive control of their businesses and of use of their business assets, amounted to "obtaining" property for purposes of RICO Hobbs Act extortion, *Scheidler v NOW*, 537 U.S. 393, 401-02 (2003). That is, *Scheidler II* clarified the standard for "obtaining" property is not mere deprivation of plaintiff's property but also that defendant must obtain "something of value from" [plaintiffs] that they could *exercise, transfer, or sell*." [*Id.* at 404-05 (emphasis added) (citation omitted).] To conclude that actions in which defendants solely

15

deprived plaintiff of something as extortionate, the Court held, "would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion." *Id.* at 405 (emphasis added).

Applying this rule to the facts here, RICO Plaintiffs' Liberato's Complaint alleges that the "extortion[ate]" objective of the Workers and the LWC's negative publicity and boycott campaign is to pressure Plaintiff Liberato to accede to the Workers' and LWC's demands. However, under *Scheidler II,* defendants' allegedly coercive pressure "to dictate and restrict [the plaintiff's business] actions and decisions" is not obtaining property for purposes of the Hobbs Act. *Id.* at 406. *Scheidler II* squarely holds that coercive conduct by a defendant "to restrict another's freedom of action" is *not* "extortion." *Id.* at 405, 406. Accordingly, RICO Plaintiffs' pleading fails to satisfy the "obtaining" requirement of extortion under Hobbs, which is fatal to a claim for extortion business control.

C. **RICO PLAINTIFFS' ALLEGED "PATTERN" OF THE "RACKETEERING ACTIVITY" IS LEGALLY INSUFICIENT TO ESTABLISH A 18 USC 1962 (c) CLAIM AS TO ALL DEFENDANTS AS TO COUNT I**

i. **The Operative Facts Alleged Do Not Provide Any Predicate Acts**

Plaintiffs' RICO claims fail on the separate and independent ground of failing to state a "pattern" of racketeering under 18 USC 1962(c). "To state a cause of action against any particular defendant, a complaint under 18 U.S.C.S. § 1962(c) must charge each named defendant with engaging in specific racketeering acts, constituting a pattern within the meaning of the statute, committed by that defendant in the course of conducting the affairs of the enterprise."*Zito v. Leasecomm Corp.*, 2003 U.S. Dist. LEXIS 17236, 1, 2003 WL 22251352 (S.D.N.Y. Sept. 30, 2003). Inasmuch as RICO Plaintiffs allege any violations of law, as

discussed *supra*, the purported predicate acts are not cognizable predicate acts under RICO.

Defendants' review of the operative facts as alleged below is illustrative:

- "targeting [Defendants]," "planning a process for discovering negative info [regarding Defendants]," "creating sham and/or surrogate entities", "recruiting" disgruntled employees [of Defendants]", "exploiting genuine social and political concerns" to gain public support and "using all available media to relentlessly harass the target employer" (Compl. ¶ 34).

These operative facts at most allege harassment, but the only law that recognizes harassment is the New Jersey state law, which provides a 30 day penalty, and none of the acts alleged above took place in New Jersey.

- "Individual Defendants threatened [a deliveryman] they would come after his job once Mr Liberato lost the case" (Compl. ¶ 45);

This alleged threat cannot be a predicate act as it does not indicate which defendant made this statement, and it does not fall under any state law cognizable as giving rise to a predicate act under RICO.

- "disruption of [Defendants] establishment" (Compl. ¶ 60) by "occupying the establishment, and refusing to leave" (Compl. ¶ 59) and possible trespass (Compl. ¶ 62);

This claim is at most a claim of trespass in New York which cannot support a predicate act.

- "chants of ridicule against anyone that [sic] came in and out of the restaurant" (Compl. ¶ 63);

These chants do not amount to any violation of law.

- "threatening to sue" (Compl. ¶ 63);

Threatening to sue is insufficient to establish a predicate act where, as in this case, there is a nexus between the subject matter of the lawsuit and the subject matter of the demand letter which stated the claims and possibility of suing if they were not remedied.

- "dissemination Plaintiffs telephone number" causing him to have to cancel his phone service (Compl. ¶ 68) ;

This action at most is harassment which is only a cognizable crime in New Jersey, and fails to be a predicate act under RICO, given the non –felony penalty.

- Staging "protest aimed at financially harming plaintiffs business by discouraging potential patrons" (Compl. ¶ 71);

These actions are protected by the First Amendment and specifically not extortion under New

York State Law.

- "attack[s] on plaintiff and management directly via disturbance inside the restaurant and harassing telephone calls" (Compl. ¶ 71);

This pleaded conduct at most is harassment, which is only cognizable in New Jersey and cannot

support a RICO predicate act as indicated *supra*.

- engaging in protests "whose [sic] sole purpose is to yell at potential patrons in order to discourage them from entering the establishment" (Compl. ¶ 72);

This conduct is protected by the First Amendment and no illegality per se is alleged.

- Extort[ing] Liberato through litigation (Compl. ¶ 76);

Litigation does not give rise to a predicate act, in these circumstances as indicated *supra*.

- Filing NLRB charges the "sole purpose of which is to harass Mr Liberato and those perceived to be closest to him in order to coerce Liberato into a settlement with the LWC" (Compl. ¶ 79);

Filing of NLRB charges is protected activity for both workers and employers. As indicated

*supra*, allegations of harassment are not predicate acts for purposes of RICO. Coercion is not a

predicate act of extortion under RICO, as *Scheidler II* distinguishes coercion from extortion.

- Engaging in an "escalating pattern of hostility harassment and intimidation aimed at bullying the plaintiffs into submitting to their demands" (Compl. ¶ 85);

Harassment, as discussed *supra*, is not a predicate act under RICO. "Intimidation' and "bullying"

may be elements of some criminal statute but are not cognizable per se.

- "personal attacks" consisting of "scream[ing] variations of sexual harasser  into Liberato restaurant... with the goal of humiliating Mr. Gomez and subjecting him to public ridicule and contempt." (Compl. ¶ 89);

These acts are allegations of defamation, which is not a predicate act under 18 USC 1961.

18

- spreading " allegation [of wage theft and sex harassment] in an attempt to stalk, ridicule and harass" Plaintiff Gomez, as a way to exert pressure on Liberato and extort him into giving into LWCs demands (Compl. ¶ 92);

This claim again raises issues of defamation. To the extent it raises harassment, such deficiencies have been address *supra*. To the extent this claim refers to the posting of flyers in Mr. Gomez's neighborhood, and is alleging a claim of stalking in New York (even though the elements of stalking are not present), as a non-felony it is not a predicate act under RICO.

- Posting "defamatory flyer[s]" around the homes of individual defendants (Compl. ¶ 94);

See discussion of defamation *supra*. To the extent these acts implicate stalking, they fail to meet the requirements of state law claims cognizable as predicate acts under 18 USC1961.

- "Complaining to local political figures" (Compl. ¶ 108);

This is not a cognizable offense under RICO.

- "threaten[ing] producers [of Telemundo show] with staging a protest and invading the show while it airs" (Compl. ¶ 113).

Aside from the fact that the complaint shows a letter to Telemundo written by defendant Aran to advise them of the labor dispute at Plaintiff Liberato's, this claim was made to allege some type of interference with business relations, which will be shown below not to be a viable state law claim.

As the operative allegations in the complaint do not give rise to a single "predicate act" as a matter of law, and as established above, the RICO Plaintiffs cannot establish the existence of or state or federal predicate acts.  This insufficiency is fatal to the 18 USC 1962(c) claim.

### ii.  RICO Plaintiffs Have Failed to Plead Two Predicate Acts as to Each Defendant

If Plaintiffs fail to plead a predicate act necessarily they fail to meet the additional requirement" at a minimum, that "a defendant personally committed or aided and abetted the commission of

two predicate acts." *McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992) (citations omitted). RICO Plaintiffs' limited as they are to general allegations that all defendants "personally ratified and authorized the conduct and actions" are doubly defective (Compl. 119). The only individual actions alleged are that defendants Aran and Grafias were involved in "defamatory" flyering (Compl. 121, 125); Ms. Rodriguez-Aran was present at the allegedly "trespassing" event of April 19, 2014 and was involved in the planning of the "Liberato Campaign" (Compl. 122-123); and defendants Ramirez, Rutilio, and Andres Crecencio participated in rallies and filed NLRB charges and an FLSA law suit. Not one of these individualized allegations gives rise to predicate acts. Far less do the individualized allegations as to any person give rise to two predicate acts. See *Linens of Eur., Inc. v. Best Mfg.*, 2004 U.S. Dist. LEXIS 18575 (S.D.N.Y. Sept. 15, 2004)

### D. NO IS SUFFICIENTLY CONSPIRACY PLEAD UNDER 18 USC 1962 (D)

As a preliminary matter, because the RICO Plaintiffs' § 1962(c) claims are insufficiently pleaded, for the several reasons stated above, the conspiracy claim must also fail. See, *First Capital Asset Mgmt.*, 385 F.3d at 182; *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 530 (S.D.N.Y. 2007) ("Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 must fail if the substantive claims are themselves deficient." (internal quotation marks omitted)).Plaintiffs allege conspiracies to violate §§ 1962(a) and (c). See also See *Linens of Eur., Inc. v. Best Mfg.*, 2004 U.S. Dist. LEXIS 18575 (S.D.N.Y. Sept. 15, 2004). As a preliminary matter, no facts are plead as to §1962(a) regarding the investment of proceeds of extortion back into the enterprise. That is, in addition to the numerous other insufficiencies, the RICO Plaintiffs do not plead that property has been actually obtained, far less invested in the enterprise.

As to conspiracy to violate § 1962(c), even assuming that the Complaint adequately pleads claims under § 1962(c), the conspiracy claim should be dismissed on the ground that RICO Plaintiffs do not allege any facts sufficient to show "the existence of an agreement to violate RICO's substantive provisions" *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) or knowledge that their actions were part of a pattern of racketeering activity. See, *Naso v. Park*, 850 F. Supp 264, 275 (S.D.N.Y. 1994) (complaint must allege that "defendants consciously agreed to commit predicate acts with knowledge of the scope of the enterprise and intent to further its affairs"); *Connolly v. Havens*, 763 F. Supp. 6, 14 (S.D.N.Y. 1991) (complaint must allege that defendants "understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses" (internal quotation marks omitted)). Additionally, Plaintiff Liberato is "required to prove that if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Id.* at 244-45.

Nowhere do RICO Plaintiffs allege that there was any agreement between the defendants or any knowledge that the alleged conduct was part of a so-called conspiracy. Further, the Complaint fails to plausibly allege that defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Id.* Instead, the Complaint contains only conclusory allegations that the defendants "conceived of and implemented a conspiracy" Compl. ¶ 23, "the defendants conspired to and did manage to obstruct" *id.* at ¶ 514 and "Defendants further conspired to ..." *id.* at ¶ 52. Even the allegations within the "Count" (Complaint at ¶ 139) fail to allege the requisite agreement. Moreover, the recitation of acts in furtherance of a conspiracy (Section III, ¶¶ 98-109) do not set forth facts sufficient to establish

the existence of an agreement to violate RICO; they merely track the elements of the conspiracy offense and are therefore insufficient to survive a motion to dismiss. *See Twombly*, 127 S. Ct. at 1965 (rejecting as plausible "a formulaic recitation of the elements of a cause of action"). For these reasons, the RICO conspiracy claim is not adequately pleaded and should be dismissed.

## IV.   ALL OF PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED.

The state law claims of private nuisance, injurious falsehood, libel, slander, and intentional infliction of emotional distress in the state court action filed by all plaintiffs in July 2014 against Defendants Aran, Rodriguez, Aran and Lopez Garfias are identical to the Counts V, VII, VII, IX and IX [sic] here. Rather than reargue these claims, Defendants incorporate by reference paragraphs ¶¶1-24, ¶¶25-79, ¶¶90-97, ¶107-111, and ¶¶112-125 of the Motion to Dismiss the State Court action (Exhibit 2). The claims of tortious interference and civil conspiracy, raised for the first time in this litigation, are discussed below.

### A. THIS COURT SHOULD EXERCISE ITS DISCRETION TO ABSTAIN FROM HEARING THE DUPLICATIVE STATE LAW CLAIMS

On this basis the Court should decline to exercise its jurisdiction on these state law claims as to the LWC Officers under the Colorado River doctrine which provides for federal abstention where state claims in federal court are parallel to state claims between the same parties on similar issue. The Court stated: "As the Supreme Court set forth in *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976), and its progeny, a federal court may abstain from exercising jurisdiction over a case where there is pending a parallel state court proceeding. The factors weighing in favor of abstention include (1) whether either court has exercised jurisdiction over areas or property; (2) the relative convenience of the forums; (3) the order in which jurisdiction was obtained; (4) whether piecemeal litigation may be avoided by abstention; (5) whether state or federal law applies to disposition of the claims; and (6) the ability of the state

court to protect the rights of a federal plaintiff. *Ferolito v. Menashi* 918 F.Supp.2d 136 (E.D.N.Y. 2013) (citations omitted). In the present case, RICO Plaintiffs' first filed their action in state court and the claims are based on NY law state. This Court should therefore abstain from considering any of the parallel state claims.

### B. THE STATE LAW CLAIMS MAY BE BARRED BY COLLATERAL ESTOPPEL AS TO THE LWC OFFICERS

Counts V, VII, VII, IX and IX [sic] as to Defendants Aran, Rodriguez, Aran and Lopez Garfias are subject to a Motion to Dismiss in State court, in which oral argument that take place on Monday, March 23, 2015. Should the claims of private nuisance, injurious falsehood, libel, slander and IIED be granted, Plaintiffs may not proceed on these same claims against the LWC Officer defendants in this case.

### C. EVEN IF THE COURT DOES NOT ABSTAIN, THE PARALLEL STATE LAW COUNTS IN THE CURRENT COMPLAINT MUST BE DISMISSED AS A MATTER OF LAW AS TO THE LWC OFFICERS UNDER STATE LAW

Plaintiffs repeat and reallege the following paragraphs of Exhibit 2, as applicable to all defendants as to the deficiencies of Counts V, VII, VIII, IX and IX [sic] herein under state law: ¶¶1-24 (as to the applicable standard of review); ¶¶25-36 as to counts V, VII, VIII, IX and IX [sic] as to the LWC defendant; ¶¶ 37-79 as to Counts VII, VIII and IX as to all defendants; ¶¶90-97 as to Count V as to all defendants; ¶107 as to Count IX [sic] as to all defendants; ¶¶108-111 as Counts VII, VIII and IX as to the Worker defendants only; and ¶¶112-125 as to all defendants of (Exhibit 2).

### D. THE CLAIM FOR CIVIL CONSPIRACY MUST BE DISMISSED.

It is well settled that there is no independent tort in New York for "civil conspiracy" *Niagara Mohawk Power Corp. v. Testone,* 272 A.D.2d 910, 911 [708 N.Y.S.2d 527]; *see,*

*American Baptist Churches of Metro. N.Y. v. Galloway,*. "[O]rdinarily, a charge of conspiracy, in and of itself, does not give a ground for civil relief, unless followed by allegations of overt acts, and resulting injury." *Keller v. Levy,* 265 A.D. 723, 724 (1st Dept.1943). Consequently, "[w]hile there is no cognizable action for a civil conspiracy, a plaintiff may plead conspiracy in order to connect the actions of the individual defendants with an actionable underlying tort and establish that those acts flow from a common scheme or plan." *American Preferred Prescription, Inc. v. Health Mgmt., Inc.,* 252 A.D.2d 414, 416 (1st Dept.1998). However, as noted in *Niagara Mohawk Power Corp, supra,* there no civil remedy for extortion or attempted extortion. An attempt to commit a crime or tort is analogous to a conspiracy to undertake such conduct. In our view, neither the legislative scheme nor common-law precedent supports an inference that the Legislature intended to create a statutory right of action for an attempt to commit a crime, including extortion. Id at 528-530. In light of the foregoing, the Count for Civil Conspiracy must be dismissed as a matter of law as to all defendants..

## E.   THE CLAIM FOR TORTIOUS INTERFERENCE MUST BE DISMISSED

As noted in *Street Beat v Sportswear v National Mobilization against Sweatshops,* 698 N.Y.S.2D 820 (1999), in a case similar to this, an employer sued workers and their support group for torts, *inter alia*, of defamation and tortious interference with business relations. The Court found the case to be a SLAPP suit, but in addition stated: "In order to establish the tort of interference with contract, plaintiff must show defendants' "... intentional procurement of the third-party's breach of the contract *without justification* ... " *Lama Holding Co. v. Smith Barney,* 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370, emphasis supplied. The tort of interference with prospective contract rights requires that plaintiff show more culpable conduct than is required for tortious interference with an existing contract *NBT Bancorp v. Fleet/Norstar*

24

*Fin. Group,* 87 N.Y.2d 614, 621, 641 N.Y.S.2d 581, 664 N.E.2d 492. RICO Plaintiffs have not even met its burden with respect to the tortious interference with contract claim. In order for there to be such a tort, the motive for the interference must be "solely malicious" *M.J. & K. Co., Inc. v. Matthew Bender and Co., Inc.,* 220 A.D.2d 488, 631 N.Y.S.2d 938. The RICO Plaintiffs have not alleged any facts to support a claim that LWC defendants and the individual Worker defendants acted solely with malice or that their protests over wage theft and sexual harassment are unjustified. In light of the foregoing, RICO Plaintiffs' claim for tortious interference with business relationships must be dismissed.

<b>CONCLUSION</b>

For the foregoing reasons, the defendants respectfully request that this motion should be granted and plaintiffs' complaint be dismissed in its entirety.

Dated: New York, New York
      March 20, 2015

Respectfully submitted,

LAW OFFICES OF JEANNE E. MIRER, P.L.L.C.

By: _____

Jeanne E. Mirer
*Attorney for Defendants*
1700 Broadway, 21st Flr.
New York, NY 10019
(212) 231-2235
Jeanne@jmirerlaw.com